## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD DEAN ROSIN, | § | |
| (TDCJ-CID #580399) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-09-3908 |
| | § | |
| RICK THALER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND OPINION

Richard Dean Rosin sought habeas corpus relief under 28 U.S.C. § 2254, challenging a disciplinary conviction at the Ellis Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). Rosin is serving sentences for Texas state-court convictions. On October 13, 2010, the United States Court of Appeals for the Fifth Circuit affirmed the dismissal of Rosin's habeas claim but vacated the dismissal of possible civil rights claim and remanded for the district court to consider whether Rosin has alleged any civil rights claims cognizable under § 1983. *Rosin v. Barnett,* Appeal No. 10-20150 (5th Cir. 2010).

On April 11, 2011, this court granted Rosin's motion to file a civil rights complaint. (Docket Entry No. 27). Rosin submitted an amended complaint on May 23, 2011. (Docket Entry No. 28). Rosin sued the following prison officials at the Ellis Unit: two disciplinary captains, Michael D. Barnett and Deleta D. Jones; two sergeants, Cade T. Crippin and Beverly A. Smith; counsel substitute, Mrs. McMillian; and Jane/John Doe, a member of the Ellis Unit administration. In his response to this court's order for a more definite statement, (Docket Entry No. 34), Rosin alleged that these defendants violated his civil rights by requiring him to work beyond his physical abilities,

denying him due process, retaliating against him for using the grievance system, denying him access to the courts, and engaging in a conspiracy.

Based on a careful review of the pleadings, the record, and the applicable law, this court concludes that Rosin's civil rights claims are not cognizable and lack a basis on which he may recover. The claims are dismissed, and final judgment is entered by separate order, for the reasons explained in detail below.

I.      **Rosin's Complaint and More Definite Statement**

In his amended pleadings and submissions, Rosin alleges that before November 2008, Captain Barnett assigned him to work in the field squad. Rosin alleges that work in the field squad was beyond his physical ability and caused him pain and suffering. He alleges that he was under medical restrictions forbidding field squad work. Rosin alleges that Captain Barnett knew about his medical restrictions because he had to review all inmates' medical restrictions before making work assignments. Rosin alleges that Captain Barnett retaliated against him for writing grievances about different issues by keeping him housed in the field squad cell block and making him work in the field squad, which is considered punishment by all prisoners in Texas prisons. Rosin alleges that medical restrictions in place since March 26, 2007 prohibited him from squatting and from sleeping on an upper bunk. (*Id.* at 18). Before November 5, 2008, Rosin had been assigned to work in the field squad on three different occasions.

When asked in the order for a more definite statement if he informed the defendants about his medical restrictions, Rosin responded:

> Only Captain Barnett. I don't want to get off track here. This case is about the arbitrary and capricious disciplinary written by Captain Barnett and the violation of my due process rights in that case.

> Anything I say in this document in regards to any other issue is only
> to inform this court as to why an arbitrary and capricious disciplinary
> case was written against me. Unless the court deems otherwise.

(Docket Entry No. 34, Plaintiff's More Definite Statement, p. 20).   Rosin described his job

assignment in the field squad as follows: "A lot of walking, climbing, squating [sic] depending on

whether we work in the garden or flatweeding."  When asked to explain why his medical restrictions

conflicted with his duties of his job assignment, Rosin stated:

> Climbing on and off the line trailers is the same as climbing on and
> off the top bunk in the cell. My knees are very bad and give out
> eas[i]ly its[sic] an accident just waiting to happen, it did! I was
> specifically ordered to squat down and pick onions, potatoes, carrots,
> etc. That is doing exactly what my restriction says not to do. NO
> SQUATING [sic].

(Docket Entry No. 34, Plaintiff's More Definite Statement, p. 20).

Rosin alleges that starting in late October 2008, all prisons in Texas were on a lockdown

status.  Because of the lockdown, only sack meals were available.  According to Rosin, TDCJ-ID

policy mandated that inmates be fed a hot meal before field work.  Rosin alleges that Warden Janicek

ordered the field force to go to work on the morning of November 5, 2008 without first providing

a hot meal.  Three inmates passed out and were taken to the infirmary and Rosin barely made it

through the day.

When Rosin returned to the prison unit in the trailer, he fell while getting out of the trailer

and broke his arm.  Rosin alleges that the injury was a compound fracture requiring major surgery

to install a metal plate and thirteen screws to hold the bones together.  Rosin alleges that he suffered

great pain from this injury and surgery and that his arm is disfigured.

Rosin alleges that the trailers used to transport inmates to the fields were unsafe.  (Docket Entry No. 34, Plaintiff's More Definite Statement, p. 16).  Because there was no entrance or exit cut into any side of the trailer, in order to get in or out, inmates had to climb up on the trailer and swing their legs over the edge.  (Docket Entry No. 34, Plaintiff's More Definite Statement, p. 16).  Rosin alleges that Warden Janicek violated his rights to a safe work environment by ordering him to work against the TDCJ-ID lockdown policy and providing an unsafe trailer.

On December 1, 2008, Rosin filed a Step 1 Grievance complaining of being falsely charged with a disciplinary violation.  (Docket Entry No. 34, p. 40).  The grievance stated that Officer Gilcrease had falsified documents when he charged Rosin with committing a negligent and unsafe act in jumping off the side of the trailer instead of using the step.  Rosin stated that he did "unload" properly but slipped and fell because the single step was "too far from where you have to climb over the trailer.  These trailers are not built where anyone can load or unload safely."  On January 6, 2009, Assistant Warden Gaston responded to this grievance, as follows:

> Minor disciplinary case #20090071934 was reviewed.  There was no procedural errors noted.  Sufficient evidence was presented to support the charge of 44.0 engaging in negligent behavior or in an unsafe []act that results in injury.  The imposed punishment of thirty (30) days commissary restriction and thirty (30) days cell restriction was within established guidelines.  Therefore, this office warrants no action on your behalf.  The case shall stand as rendered.

(Docket Entry No. 34-1, p. 1).

On January 14, 2009, Rosin filed a Step 2 Grievance stating that Officer Gilcrease had not witnessed the incident and had written the disciplinary charge following Warden Janicek's instructions.  (Docket Entry No. 34-1, p. 2).  On February 23, 2009, Linda Richey responded to this grievance, as follows:

> Minor Disciplinary Case #20090071934 has been reviewed.  The disciplinary charge was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence.  All due process requirements were satisfied and the punishment assessed by the Disciplinary Hearing Officer was within agency guidelines.  No further action is warranted at this time.

*Id.* at 3.

On December 8, 2008, Rosin filed a Step 1 Grievance complaining of an improper work assignment.  (Docket Entry No. 34-1, p. 4).  Rosin asserted that when the doctor placed his arm in a cast, he said that he did not know why Rosin had been required to do the field work.  On February 26, 2009, Assistant Warden Gaston responded:

> A review of your complaint was conducted.  A review of your restrictions shows that on 11/7/08 you had medically unassigned added and the incident in question date was 11/5/08.  Therefore, you were correctly assigned to the field force at the time of this issue.  No action warranted.

(Docket Entry No. 34-1, p. 5).

On March 9, 2009, Rosin filed a Step 2 Grievance, complaining that he was forced to work despite the lockdown.  (Docket Entry No. 34-1, p. 6).  On May 18, 2009, Assistant Region 1 Investigator, Kevin Mayfield, responded: "Your Step 2 Grievance has been investigated by this office.  Your assignment to the field force was in compliance with your medical restrictions. Records indicate you are currently medically unassigned.  This should resolve your complaint.  No further investigation is warranted by this office." (Docket Entry No. 34-1, p. 7).

In addition to filing grievances against Captain Barnett, Sergeant Crippin, and the Ellis Unit administration over the work assignment and resulting injury, Rosin sought help from inmates working in the law library in filing a personal injury lawsuit against several defendants at the Ellis

Unit.  Rosin alleges that someone in the law library told the Ellis Unit administration about the lawsuit.

Rosin alleges that the events relevant to this case began with a cell search on Tuesday, May 5, 2009.  He alleges that Sergeant Crippin searched his cell as part of Captain Barnett's investigation into a small package of tobacco found in the chapel restroom on Monday, May 4.  As a result of Sergeant Crippin's search, Rosin was charged with a disciplinary violation for possessing nuisance contraband, consisting of scotch tape, broken radio headphones, headphones' wire, and a pair of gym shorts.  On Thursday, May 7, 2009, counsel-substitute Mrs. McMillian notified Rosin that a major disciplinary case, #20090238402, alleging that he did possess contraband, had been filed.  Rosin stated in writing that all the contraband except the gym shorts belonged to him.  He alleges that the shorts that belonged to his cell mate.

Rosin alleges that on the same day, Captain Barnett came to the cell and accused him of being involved with tobacco.  According to Rosin, Captain Barnett told him that a drug test would be given the next morning and said, "I hope you are dirty."  The following morning, Friday, May 8, Rosin was sent to the infirmary and Sergeant Crippin administered a drug test.  Rosin alleged that this was a form of harassment.  The test was "clean."

On Monday, May 11, 2009, Rosin was given a hearing on disciplinary case #20090238402, alleging possession of nuisance contraband.  Rosin pleaded guilty to possessing the items with the exception of the gym shorts.  He told the disciplinary hearing officer, Captain Jones, that the gym shorts belonged to his cell mate.  Captain Jones conceded that the gym shorts were not Rosin's and dismissed the Code 18.0 charge of sewing a pocket into the gym shorts.  On the same day, Sergeant Smith read Rosin an offense report stating that he "was determined to have possessed a tobacco

product, namely a 3/4 ounce package of smokeless tobacco along with other tobacco products that were not [recovered] during the incident." Rosin identifies this disciplinary case as the basis of this lawsuit. Rosin alleges that three other officers at the front desk knew that the disciplinary case was not written properly and was missing several parts.

On Tuesday, May 12, 2009, the administration held a hearing to reclassify Rosin's custody level after his conviction for possessing nuisance contraband. The committee placed him in the more restrictive medium custody. Rosin alleges that the committee made the reclassification without allowing him to speak. He alleges that the Ellis Unit administration conspired to isolate him so he could not file the personal injury lawsuit he was working on.

On Wednesday, May 13, 2009, counsel-substitute Mrs. McMillian notified Rosin of a major disciplinary case, #20090245331, charging a violation of Code 16.1 (did use or possess a tobacco product). Rosin alleges that the offense pleading by Captain Barnett did not include all the elements required to charge a violation of Code 16.1. Rosin alleges that as a result, the charge did not give him adequate notice or allow him to prepare a proper defense, in violation of his due process rights. Rosin alleged that this deficient disciplinary charge was part of the defendants' conspiracy to convict him in order to isolate him so he would not have access to the help he needed to file his personal injury lawsuit in a timely manner. Rosin alleges that his counsel substitute, Mrs. McMillian, knew about the omitted and deficient information on the disciplinary form but did not investigate or object, violating Rosin's due process rights.

On May 18, 2009, prison officials conducted a hearing on disciplinary case #20090245331. Rosin alleges that before the hearing started, disciplinary hearing officer Captain Jones said that he could have no witnesses and could only ask a few questions. Rosin alleges that he was denied his

due process right to call and question witnesses. He alleges that if allowed, he would have called Sergeant Crippin, the investigating officer; Adam Guerra, a cell mate; and Keith Cobb and Rubin Ortiz, two chapel workers to testify.

During the disciplinary hearing, Captain Barnett testified that two confidential informants came to his office on Wednesday, May 6, 2009, alleging that they saw Rosin on Sunday night, May 3, at approximately 7:30 p.m., in the chapel restroom, receiving a package. Chapel worker Keith Cobb reported that on Monday, May 4, 2009, at approximately 10:00 a.m., he found a package of approximately 3/4 ounce of smokeless tobacco on the chapel restroom floor. Captain Barnett was called to investigate.

Rosin alleges that the package he supposedly received did not exist and that he was not in the chapel on the night the two confidential informants claim he was there. Rosin alleges that the chapel restroom is a common area where many inmates go on Saturdays and Sundays. Rosin alleges that given these circumstances, there is no way a small package found on the chapel restroom floor could be linked to him. Rosin alleges that Captain Barnett's purpose for fabricating this disciplinary case was retaliation for the grievances over the work assignment and broken arm. Rosin alleges that Captain Jones and Captain Barnett conspired to convict him of this fabricated disciplinary case in order to isolate him and prevent him from getting help to file his personal injury lawsuit.

Rosin asserts that before this case, he had not been charged with a disciplinary violation for tobacco possession in his 20 years of incarceration. Rosin alleges that based on these two disciplinary convictions and one other, he was transferred to the Estelle High Security Unit, a 23-hour-a-day lockdown facility generally reserved for violent, assaultive, and current escape- or threat-

risk inmates.  Rosin alleges that he was transferred to make it impossible for him to get the help, information, and materials needed to file his personal injury lawsuit in a timely manner.

The third disciplinary conviction, in case #20090358356, was in August 2009.  It alleged that Rosin engaged in a criminal conspiracy with offender James Ramey with the intent that a felony be committed by having a relative send money to Ramey's wife so that the money could be passed on to others or smuggled into the Ellis Unit as paper currency or other contraband items.  Rosin alleges that all three disciplinary cases were in retaliation for the grievances over the work assignment and broken arm and to prevent him from getting help needed for timely filing his personal injury lawsuit. Rosin seeks unspecified compensatory and punitive damages.

## II.      The Applicable Legal Standards

A federal court reviews and dismisses an action in which the plaintiff is proceeding *in forma pauperis* before service if that action is frivolous or malicious.  28 U.S.C. § 1915(e)(2)(B)(i).  A complaint is frivolous if it lacks an arguable basis in law or fact.  *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

This court construes Rosin's allegations liberally because he is a *pro se* litigant.  *Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994).  At the same time, because this court has provided Rosin the opportunity to amend his complaint by answering a questionnaire "specifically tailored to elicit relevant facts that might support [the plaintiff's] claims," that limits the need to speculate as

to additional facts. *Macias v. Raul A. (Unknown), Badge No. 153,* 23 F.3d 94 (5th Cir.), *cert. denied,* 513 U.S. 883 (1994). The questions this court asked Rosin to answer sought information about the defendants' statements and conduct and their knowledge of his medical work restrictions. This court has provided Rosin an opportunity to state his allegations more specifically. *See Eason v. Thaler,* 14 F.3d 8, 10 (5th Cir. 1994) (holding that the district court abused its discretion in dismissing *in forma pauperis* complaint without providing the plaintiff an opportunity to offer more detailed factual allegations); *see also Mitchell v. Sheriff Dep't, Lubbock Cnty., Tex.,* 995 F.2d 60, 62-63 (5th Cir. 1993) (vacating and remanding the district court's § 1915(d) dismissal of an *in forma pauperis* complaint because the plaintiff's allegations were unclear).

## III.   The Claim that Rosin Received an Improper Work Assignment

In *Jackson v. Cain,* 864 F.2d 1235 (5th Cir. 1989), the Fifth Circuit held that "[i]f prison officials knowingly put [a prisoner] on a work detail which they kn[o]w would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs," in violation of the Eighth Amendment. *Id.* at 1246; *see also Mendoza v. Lynaugh,* 989 F.2d 191, 194 (5th Cir. 1993) ("To be sure, if prison officials assign an inmate to work detail and they know that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference." (citing *Jackson,* 864 F.2d at 1246)).

In *Farmer v. Brennan,* 511 U.S. 825 (1994), the Supreme Court clarified that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. "While . . . deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835.

 *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994), is instructive. The plaintiff in *Reeves* testified at a *Spears* hearing that when detention officers ordered him to clean floor caulking, he responded that he physically could not do the work and that he had medical restrictions on work assignments from an earlier back injury. One of the officers threatened the plaintiff with a disciplinary report for failing to obey a direct order if he refused to do the cleaning. The plaintiff complied. As he worked at the cleaning job, his back began to hurt. Although he told the officers about the pain, they told him to keep working. The pain increased and spread to the lower abdomen. The plaintiff was finally allowed to stop when he saw a lump form on his abdomen. A medical examination showed that he had a hernia. The plaintiff testified that if any one of the officers had checked into his medical restrictions, the hernia could have been avoided.

 The Fifth Circuit concluded that the record did not give rise to an Eighth Amendment violation because the deliberate-indifference standard was not met. If the officers had checked, they would not have found current medical restrictions relating to a prior back condition. There was no objective indication that the plaintiff was at risk for developing a hernia if he scrubbed the floor. Even though the plaintiff complained of pain, the officers' insistence that he nonetheless do the work was negligent at most and did not amount to deliberate indifference to the plaintiff's medical limits or needs. *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (defining "wanton").

 Rosin alleges that he was forced to work in the field squad despite his medical restrictions and despite the absence of a hot meal before working, and was required to ride to and from the fields

in a trailer that was unsafe to get in and out of. The first issue is the constitutionality of assigning Rosin to the field squad in light of his medical restrictions. *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). The records show that on March 26, 2007, medical personnel at the prison evaluated Rosin and imposed two restrictions: no squatting and lower bunk only. There was, however, no restriction against working in the field squad and no medical limit on work assignment. To the contrary, the record shows that medical personnel determined that Rosin could safely work in the field squad within the restrictions. There is no allegation that Captain Barnett was aware that an assignment to the field squad was against a medical restriction or that the particular tasks Rosin was ordered to do once he was out in the field were inconsistent with his medical restrictions. Even if the defendants were negligent in establishing his work restrictions or making his job assignment, such negligence is not unconstitutional. *See Jackson,* 864 F.2d at 1246.

Moreover, Rosin does not allege that he was injured while working in the field squad. Rather, Rosin's own pleadings and responses to this court's interrogatories state that he was injured as he was exiting the trailer used to transport groups of inmates between the field and the unit. Rosin has not alleged that he was injured because prison officials knowingly forced him to perform work assignments that were inconsistent with his work restrictions or that they knowingly imposed work requirements beyond his physical capabilities. *See Jackson v. Cain,* 864 F.2d 1235, 1246 (5th Cir. 1989); *Mendoza v. Lynaugh,* 989 F.2d 191, 194 (5th Cir. 1993).

Nor is there any allegation that Warden Janicek knew that giving Rosin a sack meal rather than a hot meal before he began working in the field would expose him to a risk of serious harm. Rosin did not allege that the defendants, including Captain Barnett and Warden Janicek, were aware that getting in and out of the trailer, which was equipped with a step, was inconsistent with Rosin's

medical restrictions. Instead, Rosin was charged with a minor disciplinary case for negligently failing to use the step while getting out of the trailer on November 5, 2008.

Rosin does not allege that the defendants were aware of a substantial risk that he was at risk for serious harm or injury by working in the field squad. Rosin has not alleged facts that, if proven, would show that the defendants knew of, and disregarded, a substantial risk to his health and safety. From the pleadings, it appears that the prison medical personnel were aware of Rosin's medical limits, imposed restrictions consistent with those limits, but did not impose any restriction against working in the field. There is no basis to conclude that the prison officials who assigned Rosin to the field squad were deliberately indifferent to his serious medical needs. The facts Rosin alleges do not demonstrate that he faced an obvious risk to his health or safety in working in the field squad. Rosin's claim lacks an arguable basis in law in light of the *Farmer* standard for deliberate indifference and the Fifth Circuit's holding in *Jackson,* 864 F.2d at 1246. The improper-work-assignment claim is dismissed under 28 U.S.C. § 1915(e)(2)(B)(i).

## IV.    The Due Process Claims

### A.    The Claim of an Improper Disciplinary Hearing

Rosin alleges that the disciplinary hearing officer, Captain Jones, violated his right to due process guaranteed by the Fourteenth Amendment by finding him guilty of possessing tobacco without allowing him to call witnesses or present evidence. (Docket Entry No. 34, p. 3). Prisoners charged with a disciplinary violation are entitled to certain due process rights under the Fourteenth Amendment when a conviction may result in punishment that infringes a liberty interest. *Hudson v. Johnson,* 242 F.3d 534, 535-36 (5th Cir. 2001). In Texas, however, only sanctions that result in the loss of good-time credits for inmates who are eligible for release on mandatory supervision, or

that otherwise directly affect release on mandatory supervision, infringe a liberty interest. *Malchi v. Thaler,* 211 F.3d 953, 957-58 (5th Cir. 2000); *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997); *Orellana v. Kyle,* 65 F.3d 29, 31-33 (5th Cir. 1995). Rosin indicates that he is not entitled to release to mandatory supervision. (Docket Entry No. 34, p. 10). If Rosin is not eligible for release on mandatory supervision, he has no liberty interest in his accrued good-time credits or other punishments imposed as a result of the disciplinary hearing and cannot assert a violation of due process rights. *See Evans v. Baker,* 442 Fed. App'x 108, 2011 WL 4376219 (5th Cir. 2011) (citing *Arnold v. Cockrell,* 306 F.3d 277, 279 (5th Cir. 2002); *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997)). Rosin's claim against Captain Jones is not cognizable because Rosin does not have a liberty interest affected by the punishment for the disciplinary conviction that implicates his due process rights.

Even if Rosin were entitled to mandatory supervision, his due process claims against Captain Jones could not proceed. To recover damages for an allegedly "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). If a judgment in the plaintiff's favor on the damages claim would "necessarily imply the invalidity of his conviction or sentence," then the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* A "conviction" for purposes of *Heck* includes a ruling in a prison disciplinary proceeding. *Edwards v. Balisok,* 520 U.S. 641 (1997).

Rosin's claim that excluded witness testimony and documentary evidence required an acquittal on the disciplinary charge is barred under *Heck* because it calls into question the validity of the disciplinary conviction. If Rosin is not arguing that the exclusion of testimony or documents changed the outcome, then the exclusion of that testimony or documentary evidence is harmless and cannot give rise to a due process claim. *See, e.g., United States v. Carreon,* 11 F.3d 1225, 1239 (5th Cir. 1994). Under either approach, Rosin's due process claim relating to his disciplinary hearing fails as a matter of law.

### B.   The Claim that the Defendants Violated Prison Rules in Punishing Him for Disciplinary Convictions

Rosin contends that the prison disciplinary rules created a liberty interest in particular procedural guidelines that were not followed before he was punished by restrictive confinement and revocation of good-time credits. The failure to comply with prison regulations is not in itself a constitutional violation. *See Jackson v. Cain,* 864 F.2d 1235, 1251–52 (5th Cir. 1989). The pleadings and exhibits show that Rosin received timely notice of the disciplinary charges, participated in the hearing, and was provided with reasons for the finding of guilt. Rosin received the process he was due. He has not shown a violation of prison rules or regulations that violated his due process rights during the disciplinary proceedings. This claim is dismissed.

### C.   The Claim that the Grievance System was Inadequate

Rosin alleged that the defendants violated his civil rights by failing to resolve the complaints presented in his grievances. "A prisoner has a liberty interest only in freedoms from restraint imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005) (internal citation and quotation

omitted).  An inmate does not have a constitutionally protected liberty interest in having grievances resolved to his satisfaction.  There is no due process violation when prison officials fail to do so. *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.,* slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing, et al.,* slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same).  The defendants' alleged failure to address Rosin's grievances to his satisfaction did not violate his constitutional rights.  The documents Rosin submitted show that the defendants investigated his grievances and provided timely responses.  Rosin's due process claim based on an inadequate grievance procedure lacks merit and is dismissed.

### D.    The Claim that Property was Improperly Confiscated

Rosin also alleges that Officer Crippin confiscated a $180.00 calculator.  (Docket Entry No. 34, Plaintiff's More Definite Statement, p. 3).  This claim is barred by *Hudson v. Palmer,* 468 U.S. 517 (1984) and *Parratt v. Taylor,* 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).  Under these cases, property deprivations caused by alleged misconduct by state prison officials do not infringe constitutional due process, provided that adequate State postdeprivation remedies exist.  *Alexander v. Ieyoub,* 62 F.3d 709, 712 (5th Cir. 1995).  In Texas, when an inmate's property is taken without compensation, he has a remedy in state court and no federal-court claim under 42 U.S.C. § 1983 unless there is no postdeprivation remedy for loss or damage to property or the remedy is inadequate.  *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984).  Rosin has not made this showing.

On June 13, 2008, Rosin filed a Step 1 Grievance complaining of the confiscation of his calculator. (Docket Entry No. 1-1, p. 3). Rosin explained that he had had the calculator for nine or ten years. Prison officials told Rosin that he did not need to have property papers. Though he was charged with possession of contraband for having a calculator, that case was later dismissed. Rosin stated that the fact the warden told him that he had to send the calculator home established that he owned the calculator and that it was not contraband.

On August 29, 2008, Assistant Warden Werner responded to this grievance, as follows:

> The issue concerning your calculator has been reviewed and investigated by this office. Sergeant Crippin was contacted regarding this claim and stated that the calculator you had in possession was contraband. A confiscation form was completed and disciplinary infraction was conducted. However, a review of your records indicate that the case written on this issue is not on your records. This office found no evidence to warrant action on your behalf.

(Docket Entry No. 1-1, p. 4).

On September 8, 2008, Rosin filed a Step 2 Grievance. (Docket Entry No. 1-1, p. 1). Rosin requested the return of his calculator, explaining that he used it for school. He stated that Sergeant Crippin confiscated his calculator as a form of harassment. On October 9, 2008, a prison official responded:

> An investigation has been conducted into your property claim. It was determined by the Administration [sic] has allow you to make disposition of said property. However, if you fail to contact the property officer to designate a method of disposition of confiscated property within the designated time, the property will be held for 30 days and then disposed of appropriately. No further action is warranted in this matter.

(Docket Entry No. 1-1, p. 2).

Rosin's claim based on the deprivation of property lacks merit. He was not disciplined for possessing the calculator and was instructed in how to obtain its return. The claim is dismissed.

### E.    The Claim for Ineffective Assistance of Counsel Substitute

The law is clear that an inmate cannot sue counsel substitute for damages based on alleged civil rights violations resulting from ineffective assistance in a disciplinary proceeding. *See Briscoe v. LaHue,* 460 U.S. 325, 329 n.6 (1983); *Slavin v. Curry,* 574 F.2d 1256, 1265 (5th Cir. 1983); *Banuelos v. McFarland,* 41 F.3d 232 (5th Cir. 1995). Rosin's claims against counsel substitute McMillian for ineffective assistance are dismissed as without basis in law.

## V.    The Retaliation Claim

Prison officials may not retaliate against an inmate for exercising his right of access to the courts or complaining to a supervisor about a prison employee or official. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). To prevail on a retaliation claim, an inmate must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for exercising that right, (3) a retaliatory or adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S. Ct. 559 (1997). Conclusory allegations of retaliation are insufficient to defeat a summary judgment motion. *Woods*, 60 F.3d at 1166. "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of

motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith*, 60 F.3d at 1166 (internal quotation marks omitted).

Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford–El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). *Id.* "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might rise to a level of an adverse retaliatory act. *Id.* at 687. Retaliation is actionable only if it "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

Rosin alleges that Captain Barnett retaliated against him for grievances by assigning him to the field squad. Rosin alleges that after he was injured in November 2008, he filed grievances about his work assignment and the trailer that he alleged led to his broken arm, and he was retaliated against for filing those grievances. The first retaliatory act Rosin asserts after his injury was that he was charged in May 2009 with a disciplinary case for possessing tobacco. (Docket Entry No. 28, p. 18). The fact that one event follows another in time does not evidence retaliation. *Enlow v. Tishomingo Cnty., Miss.*, 45 F.3d 885, 889 (5th Cir. 1995). When asked to provide specific facts showing that he was charged with the disciplinary case because of retaliation for prior grievances, Rosin responded:

> At first it was just Captain Barnett and Sargent Crippin retaliating
> agaisnt[sic] me for writng[sic] grievances about their harassment,
> unjust job and cell changes, cell searches that ended with unjustified

> destroyed or confiscated property, etc.  Then I was injured and It
> seemed the whole administration began to retaliate.  The answer to
> this question is the use of the unit grievance process.

(Docket Entry No. 34, Plaintiff's More Definite Statement, p. 11).

When asked to give specific facts showing that the defendants' acts were in retaliation against

him and not done for some other reason, Rosin responded:

> Captain Barnett had been harassing me for a long time, as
> documented in grievances, and other documents I could aquire[sic]
> in discovery, but not until I was seriously hurt did he begin to
> personally write disciplinary cases and come to my cell and threaten
> me.  Plaintiff states that disciplinary case#20090245331 is arbitrary
> and capricious and was written in retaliation for his filing of a
> grievance as required by law before filing a tort claim.  Plaintiff was
> denied due process in disciplinary case#20090245331, this is
> retaliation for filing a grieavance[sic] regarding my serious injuries.

(Docket Entry No. 34, Plaintiff's More Definite Statement, pp. 12-13).

Such conclusory allegations are insufficient.  To the extent Rosin relies on Captain Barnett's

decision before November 2009 to assign him to the field squad, the retaliation claim fails.  The

transfer from a different work assignment to the field squad was not adverse as a matter of law.

*Bibbs v. Early,* 541 F.3d 267, 272 (5th Cir. 2008), *Morris,* 449 F.3d at 685.  And, as noted above,

there is no basis to conclude that Captain Barnett believed that he was exposing Rosin to a risk of

harm by assigning him to the field squad.

Rosin alleges that retaliation for grievances filed after his November 2009 injury caused the

disciplinary convictions and subsequent changes in the conditions of confinement.  Rosin's pleadings

show that he was charged with a tobacco-related offense in May 2009, based on the statements of

two confidential informants.  Rosin has not established that "but for" the alleged retaliatory motive,

he would not have been charged with the disciplinary case.  The fact that this disciplinary charge was

almost six months after Rosin filed the grievances relating to his broken arm, his work assignment, and the trailer is inconsistent with a causal relationship between those grievances and the disciplinary charge and conviction. Rosin has not alleged a chronology of events from which retaliation may be plausibly inferred. Rosin's conclusory allegations are insufficient to show that the defendants retaliated against him for exercising his right to file grievances.

Additionally, Rosin has not proffered any basis to infer that the alleged acts of retaliation impeded his access to the courts or chilled his efforts to litigate. *Johnson v. Rodriguez,* 110 F.3d 299, 314 (5th Cir. 1997). Rosin's pleadings show that he continued to file grievances and that he filed two other lawsuits in federal court, Civil Action Numbers 4:10-0114 and 4:10-4436.

Rosin's retaliation claim lacks merit and is dismissed.

## VI.   The Claim of Denial of Access to the Courts

A prisoner has a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999). This is not, however, "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, "meaningful access to the courts is the touchstone." *Id.* (internal quotation marks and citation omitted); *see also Christopher v. Harbury,* 536 U.S. 403, 415 (2002). "[B]efore a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the courts.'" *McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998) (citation omitted).

Rosin alleges that he was prevented from getting other inmates to help him file a personal injury suit in Texas state court. (Docket Entry No. 34, Plaintiff's More Definite Statement, pp. 15-16). In his response to the order for a more definite statement, Rosin stated:

> At that time July 30, 2009, I was working on my first and only case
> ever attempted a tort claim in Texas civil courts. I had some reading
> material and was trying to figure out what to do. But on the date
> above I was placed in solitary and didn[']t find out until
> approximately one year later that according to the PLRA and Texas
> law I had thirty days in which to file a tort claim after receiving my
> step two grievance.
>
> Texas courts are notorious for inforcing[sic] this law, therefore I am
> time barred from filing a tort claim. I believe someone at the Ellis
> Unit knew this and that is why I was placed in solitary so I wouldn[']t
> find out. I was spending all the time I was allowed in the law library,
> trying to inlist[sic] help and learn what I could. I am sure I would
> have found the filing deadline had I not been placed in solitary.

(Docket Entry No. 34, Plaintiff's More Definite Statement, p. 14).

The Texas limitations period for personal injury actions is two years. *See* TEX. CIV. PRAC.
& REM. CODE ANN. § 16.003(a) (Vernon 2005). Rosin claims that he did not file his lawsuit because
it would have been time-barred after 30 days. (*Id.* at 14-15). Rosin did not allege that he was
prevented from filing a lawsuit in Texas state court or that he filed a suit that was dismissed as barred
by limitations. Instead, Rosin decided not to file a lawsuit in state court based on his own
determination that it was too late. Rosin has not alleged a basis to infer that his position as a litigant
was prejudiced by his denial of access to the courts. This claim lacks merit and is dismissed.

## VII.   The Conspiracy Claim

Rosin asserted that prison officials engaged in a conspiracy falsely to charge him with
disciplinary violations and prevent him from access to inmates to help him timely file a personal
injury lawsuit in state court. The elements of civil conspiracy are an actual violation of a right
protected under § 1983 and actions taken in concert by the defendants with the specific intent to
violate the aforementioned right. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.), *cert. denied*, 513

U.S. 868 (1994). A plaintiff who asserts a conspiracy claim under the civil rights statutes must plead the "operative facts" showing an illegal agreement; "bald allegations" of an agreement do not suffice. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987); *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir. 1982). The plaintiff may, and often must, rely on circumstantial evidence, because conspiracies "are rarely evidenced by explicit agreements." *Mack v. Newton*, 737 F.2d 1343, 1350-51 (5th Cir. 1984) (quoting *Michelman v. Clark-Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1043 (2d Cir. 1976)).

Rosin has not alleged facts showing illegal acts or that the defendants entered into an agreement to commit an illegal act. *Kerr v. Lyford,* 171 F.3d 330, 341-42 (5th Cir. 1999) (finding that the appellants' civil conspiracy claim was contingent on the success of their malicious prosecution claim). Rosin's allegations that the defendants conspired to violate his First Amendment right to seek legal redress do not state a constitutional violation. "It remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993) (quoting *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir. 1984)).

Rosin's conspiracy claim is dismissed.

## VIII.   The Claims Against the Supervisory Officers

Rosin claims that Warden Janicek and Rick Thaler failed to supervise officers under their authority. (Docket Entry No. 34, Plaintiff's More Definite Statement, pp. 4-6). Individual liability under § 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of employees. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials may be liable if their own action or inaction, performed with a certain degree of culpability,

proximately causes a constitutional violation. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). To establish individual liability as to Janicek and Thaler, Rosin would have to show either (1) personal involvement in the alleged wrongful acts, or (2) that these defendants implemented a policy that resulted in the deprivation of his constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).

Rosin has alleged that these defendants were personally involved in the violation of his rights. A supervisor may be held liable if he is either personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Thompkins*, 828 F.2d at 304. The plaintiff must show that the official's act, or failure to act, either caused or was the moving force behind the plaintiff's harm. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). But Rosin has not shown a basis to infer that either acted with deliberate indifference or violated Rosin's constitutional rights. "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Brenoettsy*, 158 F.3d at 911. "The standard of deliberate indifference is high." *Id.* (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)). Rosin has made no showing that these defendants were aware of and disregarded a substantial risk to his safety. Nor has Rosin shown that these defendants implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights. *Cronn*, 150 F.3d at 544. Rosin has not shown a causal connection between actions by Janicek and Thaler and the alleged constitutional violations. The claims against Janicek and Thaler are dismissed.

IX.   **The Claims Against the Defendants in Their Official Capacities**

To the extent Rosin sues defendants in their official capacities, these damages claims are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacities. *Cory v. White*, 457 U.S. 85, 90 (1982).

X.   **Conclusion**

The action filed by Richard Dean Rosin (TDCJ-CID Inmate #580399) lacks an arguable basis in law. His claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i). Any remaining pending motions are denied as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Rosin's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1)   the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2)   the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)   the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-Strikes List.

SIGNED on June 5, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge